# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MR. J. BURNS, et al.,<br><br>　　　　Defendants. | Case No.  1:19-cv-00715-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANTS' EXHAUSTION-RELATED MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 25) |

Kareem J. Howell ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' exhaustion-related motion for summary judgment, filed July 1, 2020. (ECF No. 25.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Burnes, Babb, Tumacder, and Sexton for deliberate indifference in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and conspiracy; against Defendant Sanchez for deliberate indifference in violation of the Eighth Amendment; and against Defendant Padrnos for retaliation in violation of the First Amendment.

///

1

On March 9, 2020, Defendants filed an answer to the complaint. (ECF No. 20.) On March 10, 2020, the Court issued the discovery and scheduling order. (ECF No. 21.)

As previously stated, on July 1, 2020, Defendants filed the instant exhaustion-related motion for summary judgment. Plaintiff has not filed an opposition and the time to do so has expired. Local Rule 230(l).

## II.

## LEGAL STANDARD

### A.   Statutory Exhaustion Requirement

Section 1997e(a) of the Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory unless unavailable. Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

Section 1997e(a) also requires "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation omitted). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effective without imposing some orderly structure on the course of its proceedings." Id. at 90-91. "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies … available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis in original) (citing Booth v. Churner, 532 U.S. 731, 739 (2001)).

1	The failure to exhaust is an affirmative defense, and the defendant or defendants bear the
2	burden of raising and proving the absence of exhaustion. Id. at 216; Albino, 747 F.3d at 1166.
3	"In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may
4	move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendant or
5	defendants must produce evidence proving the failure to exhaust, and they are entitled to
6	summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most
7	favorable to the plaintiff, shows the plaintiff failed to exhaust. Id.

### B.	Summary Judgment Standard

9	Any party may move for summary judgment, and the Court shall grant summary
10	judgment if the movant shows that there is no genuine dispute as to any material fact and the
11	movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks
12	omitted); Albino, 747 F.3d at c1166; Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th
13	Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be
14	supported by (1) citing to particular parts of materials in the record, including but not limited to
15	depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not
16	establish the presence or absence of a genuine dispute or that the opposing party cannot produce
17	admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The
18	Court may consider other materials in the record not cited to by the parties, although it is not
19	required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026,
20	1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir.
21	2010). "The evidence must be viewed in the light most favorable to the nonmoving party."
22	Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2014).

23	Initially, "the defendant's burden is to prove that there was an available administrative
24	remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172.
25	If the defendant meets that burden, the burden of production then shifts to the plaintiff to "come
26	forward with evidence showing that there is something in his particular case that made the
27	existing and generally available administrative remedies effectively unavailable to him." Id.
28	However, the ultimate burden of proof on the issue of administrative exhaustion remains with the

defendant.  Id.  "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  Id. at 1166.  However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts."  Id.

## III.

## DISCUSSION

### A.   Summary of CDCR's Administrative Appeal Process

A prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR") satisfies the administrative exhaustion requirement for a non-medical appeal or grievance by following the procedures set forth in California Code of Regulations, title 15, §§ 3084-3084.9.

California Code of Regulations, title 15, § 3084.1(a) provides that "[a]ny inmate … under [CDCR's] jurisdiction may appeal any policy, decision, action, condition, or omission by the department or its staff that the inmate … can demonstrate as having a material adverse effect upon his or her health, safety, or welfare."  An inmate is required to use a CDCR Form 602 to "describe the specific issue under appeal and the relief requested."  Cal. Code Regs. tit. 15, § 3084.2(a).  An inmate is limited to one issue, or related set of issues, per each CDCR Form 602 and the inmate "shall state all facts known and available to [them] regarding the issue being appealed at the time of submitting" the CDCR Form 602.  Cal. Code Regs. tit. 15, § 3084.2(a)(1) & (a)(4).  Further, the inmate "shall list all staff member(s) involved and … describe their involvement in the issue."  Cal. Code Regs. tit. 15, § 3084.2(a)(3).  If known, the inmate must include the staff member's last name, first initial, title or position, and the dates of the staff member's involvement in the issue being appealed.  Id.  If the inmate does not know the staff member's identifying information, the inmate is required to "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question."  Id.

Unless the inmate grievance falls within one of the exceptions stated in California Code of Regulations, title 15, §§ 3084.7(b)(1)-(2) and 3084.9, all inmate grievances are subject to a

three-step administrative review process: (1) the first level of review; (2) the second level appeal to the Warden of the prison or their designee; and (3) the third level appeal to the Secretary of CDCR, which is conducted by the Secretary's designated representative under the supervision of the third level Appeals Chief. Cal. Code Regs. tit. 15, §§ 3084.1(b), 3084.7(a)-(d). Unless the inmate grievance deals with allegations of sexual violence or staff sexual misconduct, an inmate must submit the CDCR Form 602 and all supporting documentation to each the three levels of review within 30 calendar days of the occurrence of the event or decision being appealed, of the inmate first discovering the action or decision being appealed, or of the inmate receiving an unsatisfactory departmental response to a submitted administrative appeal. Cal. Code Regs. tit. 15, §§ 3084.2(b)-(e), 3084.3, 3084.6(a)(2), 3084.8(b).

### B. Summary of Relevant Factual Allegations of Plaintiff's Complaint

Plaintiff was diagnosed in 2006 as suffering from bipolar disorder mixed with psychotic features, a severe psychological disorder. His mental disorder substantially impairs his thought processes, perception of reality and his ability to make sound judgment and grossly impairs his behavior.

In 2011, Plaintiff was housed at CSP and Defendant Sexton was the housing unit facility captain in Plaintiff's housing unit. Currently, Defendant Sexton is the warden at CSP. In 2011, Plaintiff had a psychotic reaction and broke out the windows of his cell. At that time, Defendant Sexton ordered Plaintiff's windows to be covered in mesh[1] metal screen. Immediately after Plaintiff's windows were covered, Plaintiff's mental illness started to deteriorate.

In 2011 and 2012, Plaintiff became a danger to himself and others and received several rule violation reports that were linked to the mesh metal screens over the windows. In 2012, Plaintiff received a mental health assessment evaluation for those serious reports. The assessment was conducted by Dr. Fowler who determined that Plaintiff's mental illness contributed to his serious rule violations and found that the mesh mental window screens may be an additional restrictive stressor. The doctor found that the window screens could increase the

---

[1] Plaintiff refers to a "mush metal screen" however, the Court assumes that it is a mesh metal screen and refers to it as such.

feelings of anxiety and panic and trigger additional disruptive behavior. Defendant Sexton reviewed this report in 2012 and ordered that the mesh metal screens and yellow coatings over Plaintiff's cell be immediately removed.

Plaintiff is currently housed in a segregated housing unit for mentally challenged inmates. Plaintiff filed legal actions against Defendants Burnes, Babb, and Tumacder in February and July 2018. Plaintiff was out of CSP to attend court proceedings and returned to CSP on September 24, 2018. Upon his return, Plaintiff found that Defendants Burnes, Babb, Tumacder and Sexton had a meeting and decided to house Plaintiff back in a cell with mesh metal screens on the windows. Plaintiff alleges that this was done in retaliation for his filing complaints against Defendants Burnes, Babb, and Tumacder.

Plaintiff has not been housed in a cell with mesh metal screens over the cell windows from 2012 to 2019. On September 25, 2018, and September 27, 2018, Plaintiff spoke with Defendant Burnes about removing the mesh metal screens from the windows. Defendant Burnes admitted that Defendants Babb, Tumacder, and Sexton had agreed that moving Plaintiff to a cell with mesh metal screens was a good decision to stop Plaintiff from filing staff complaints and lawsuits against CDCR staff members. Plaintiff also told Defendant Burnes of the harm that being housed with such screens could have and was already having on his mental state. Defendant Burnes stated that he had already spoke to Defendants Babb, Tumacder, and Sexton about the risk to Plaintiff's mental state and they had no concern. Defendant Burnes told Plaintiff, "Maybe that cell will stop you from suing everyone."

Plaintiff's mental health condition started to deteriorate and he was having trouble concentrating and lost interest in reading and writing to people; he stopped exercising; he became verbally and physically assaultive toward staff; he had increased feelings of anxiety, panic attacks, and thoughts of suicide. Plaintiff submitted an emergency appeal; and on October 30, 2018, Plaintiff was interviewed by Defendant Huerta. Defendant Huerta spoke to Defendant Gamboa in great detail about Plaintiff's complaint. Both Defendants Huerta and Gamboa denied Plaintiff's appeal. They stated that Plaintiff was placed in the cell because he broke out the windows of his cell.

Defendant Huerta's girlfriend, Defendant Sanchez, works in Plaintiff's housing unit. On October 30, 2018, Defendant Huerta spoke to Defendant Sanchez about the emergency appeal that was submitted.

On February 3, 2019, Plaintiff learned that Defendant Huerta never interviewed the supervising psychiatric social worker about Plaintiff's complaint as he stated in response to Plaintiff's appeal. Defendant Sanchez told Plaintiff that Defendant Huerta had asked her to review Plaintiff's mental health file to see if there were any documents that would support his claim that he could not be housed in a cell with mesh windows. Defendant Sanchez admitted that she did not review Plaintiff's mental health records because she thought that he was lying. Defendant Sanchez said that she now knows that he is telling the truth but there is nothing that she can do about it.

Plaintiff's complaint was reviewed at the second level by Defendant L. Padrnos who interviewed Plaintiff on December 18, 2018. Defendant Padrnos stated that there was nothing he could do about Plaintiff's complaint because Plaintiff "pissed off a lot of people by filing lawsuits and he was not going to put his neck on the line" for Plaintiff. Defendant Padrnos denied Plaintiff's appeal at the second level.

Plaintiff seeks monetary and injunctive relief.

### C. Statement of Undisputed Material Facts[2,3]

1.  Plaintiff Kareem Howell (P-79828) is a prisoner in the custody of the California

---

[2] Hereinafter referred to as "UMF."

[3] Plaintiff neither admitted or denied the facts set forth by defendant as undisputed nor filed a separate statement of disputed facts. Local Rule 56-260(b). Therefore, the Court was left to compile the summary of undisputed facts from Defendants' statement of undisputed facts and Plaintiff's verified complaint. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curium); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(e). Because Plaintiff neither submitted his own statement of disputed facts nor addressed Defendants' statement of undisputed facts, the Court accepts Defendants' version of the undisputed facts where Plaintiff's verified complaint is not contradictory. The Court notes for the record that plaintiff was provided with the requirements for opposing a motion for summary judgment by Defendants in a notice filed on July 1, 2020. (ECF No. 25-1.) Therefore, the requirements of Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988) have been satisfied. In addition, the Court has omitted the facts which constitute legal statements of the law and/or prison regulations.

1  Department of Corrections and Rehabilitation (CDCR), who at all times relevant to the
2  Complaint, was incarcerated at the California State Prison-Corcoran ("Corcoran") in Corcoran,
3  California. (ECF No. 1.)

4      2.    Plaintiff initiated this action on May 22, 2019. (ECF No. 1.)

5      3.    Plaintiff submitted Appeal Log No. CSPC-5-18-05237, on October 1, 2018, in
6  which he complained that on September 24, 2018, Warden Sexton, Captain Babb, Lieutenant
7  Tamcder, and Sergeant Burns "joined together to illegally house" Plaintiff in a cell with mesh
8  metal screens. He also claimed that these individuals are all currently defendants in his active
9  civil actions. He requested that the mesh metal screens be removed and for the accused
10 individuals to stop retaliating against him. (Declaration of J. Ceballos [Ceballos Decl.] ¶ 4, Ex.
11 B, ECF No. 25-3.)

12     4.    Plaintiff was interviewed regarding the appeal at the first level of review on
13 October 30, 2018, by Sergeant Huerta. The first level response indicates that the appeal reviewer
14 also interviewed the Supervising Psychiatric Social Worker at Corcoran, who stated "we are not
15 finding a nexus between the grated cover over his window that prevent him from further
16 breaking more windows and a decline in mental health." The appeal was denied at the first level
17 of review on October 30, 2018, and Plaintiff appealed to the second level. (Ceballos Decl. ¶ 4.a,
18 Ex. B.)

19     5.    Lieutenant Padrnos reviewed Plaintiff's appeal at the second level of review. The
20 appeal was denied at the second level of review on December 27, 2018. (Ceballos Decl. ¶ 4.b,
21 Ex. B.)

22     6.    Appeal Log No. CSPC-5-18-05237 was received at the third level of review on
23 January 2, 2019. (Declaration of Howard E. Moseley [Moseley Decl.] ¶ 8.d, ECF No. 25-5.)

24     7.    Plaintiff submitted 21 other appeals during this time period, but none of them
25 complained about Lieutenant Padrnos or Psychiatric Technician Sanchez allegedly conspiring
26 and retaliating against Plaintiff by housing him I a cell with mesh metal screens on the windows.
27 (Ceballos Decl. ¶ 5.)

28

8. The Office of Appeals did not receive any non-health care related appeals from Plaintiff during the relevant time period that were screened in for review that complained about Defendant Padrnos's and Defendant Sanchez's alleged conduct in reviewing Plaintiff's grievance while housed at Corcoran State Prison (Appeal Log No. CSPC-5-18-05237). (Moseley Decl. ¶¶ 7-8.)

9. Plaintiff did not submit any health care appeals between September 24, 2018, and May 22, 2019, that complained about Psychiatric Sanchez declining to review Plaintiff's mental health records in connection with a non-health care appeal CSPC-5-18-05237 regarding mesh metal screens over his cell windows. (Henderson Decl. ¶¶ 9-12.)

**D.  Analysis of Defendants' Motion**

Defendants acknowledge that Appeal Log No. CSPC-5-18-05237 exhausted his claims against Defendants Burnes, Tumacder, Babbs, and Sexton. (Mot. at 9.) However, Defendants Sanchez and Padrnos argue that Plaintiff did not exhaust his claims against them. (Id.)

1.  <u>Deliberate Indifference Claim Against Defendant Sanchez</u>

In his complaint, Plaintiff contends that he submitted an emergency appeal regarding custody conspiring to retaliate against him by agreeing to house him in a cell with mesh metal screens over his cell windows. (Compl. at 10.) Plaintiff alleges that at the first level of review, Sergeant Huerta spoke to Defendant Sanchez about the appeal. (Compl. at 11.) Plaintiff further alleges that Huerta asked Defendant Sanchez to review Plaintiff's mental health file to see if there was any documents to support Plaintiff's claim that he could not live in a cell with metal mesh screens on the windows, Sanchez admitted that she did not review Plaintiff's mental health file because she thought Plaintiff was lying. (Compl. at 11-12.)

It is undisputed that Plaintiff filed Appeal Log No. CSPC-5-18-05237, and Plaintiff was interviewed regarding the appeal at the first level of review on October 30, 2018, by Sergeant Huerta (who is not a party to this action). The first level response notes that an interview of the Supervising Psychiatric Social Worker was conducted who stated "we are not finding a nexus between the grated cover over his window that prevent him from further breaking more windows and a decline in mental health." (Ceballos Decl. Ex. B.) The Psychiatric Technician is

presumably Defendant Sanchez, who Plaintiff contends works in his housing unit.

However, this appeal did not serve to exhaust Plaintiff's specific claims as to Defendant Sanchez. It is undisputed that Plaintiff did not file a separate appeal regarding Defendant Sanchez's involvement in the appeal regarding his complaints about the mesh metal screens over his cell windows. (Ceballos Decl. ¶ 5; Moseley Decl. ¶¶ 7-8; Henderson Decl. ¶¶ 9-12.) Indeed, in the complaint, Plaintiff alleges that on February 3, 2019, he learned that Huerta "never interviewed the Supervising Psychiatric Social Worker as he so claimed he did in the respon[se] in Plaintiff's Appeal Complaint attached hereto as Ex B" (Compl. at 11-12, Fact Nos. 31-34.). Those factual allegations form the basis of Plaintiff's deliberate indifference claim against Defendant Sanchez. (See ECF No. 9, at 6:21-23 ["Plaintiff's allegation that Defendant Sanchez admitted that she did not initially check his mental health records and she now knows he is telling the truth but would not act is sufficient to state a deliberate indifference claim."].) Thus, Plaintiff was not even aware of the factual allegations until months after the grievance was initially submitted in Appeal Log No. CSPC-5-18-05237. Consequently, this appeal could not have exhausted Plaintiff's claim against Defendant Sanchez because Plaintiff was not even aware of it at the time it was filed.

### 2. Retaliation Claim Against Defendant Padrnos

In his complaint, Plaintiff contends that Defendant Padrnos reviewed Appeal Log No. CSPC-5-18-05237, at the second level of review. (Compl. at 12.) Plaintiff alleges that Defendant Padrnos said there was nothing he could do because Plaintiff "pissed off a lot of people by filing a lawsuit and he was not going to put his neck out on the line for the Plaintiff." (Id.) Defendant Padrnos denied Plaintiff's appeal at the second level of review. (Id.)

This action is proceed against Defendant Padrnos for retaliation in violation of the First Amendment. Retaliation is a separate and distinct claim versus the claim for deliberate indifference as presented in the Appeal Log No. CSPC-5-18-05237. Indeed, the Court found that Plaintiff failed to state a cognizable deliberate indifference claim against Defendant Padrnos based on his review of Appeal Log No. CSPC-5-18-05237, but rather he stated a separate and distinct claim of retaliation. (See ECF No. 9 at 6:8-9 ["Plaintiff has failed to allege facts to state

a deliberate indifference claim against Defendants Huerta and Padrnos, the prison officials who reviewed his inmate appeals."]; Id. at 7:9-12 ["Liberally construed, Plaintiff has stated a retaliation claim against Defendant Padrnos based on the allegation that Defendant Padrnos told Plaintiff that he had "pissed off a lot of people by filing law suits" and therefore Defendant Padrnos was not willing to get involved."].)  There is nothing in the factual content of this appeal that would have alerted prison officials to Plaintiff's contention that Defendant Padrnos denied the appeal at the second level of review because of Plaintiff's prior exercise of his rights under the First Amendment.  In addition, even assuming Plaintiff had later tried to add a retaliation claim (which the Court finds he did not), administrative remedies are not exhausted as to any new issue or person later named that was not included in the originally submitted appeal.  See Cal. Code Regs. tit. 15, § 3084.1(b).  Therefore, Plaintiff did not provide prison officials with sufficient notice of this claim, and it is unexhausted.

        3.        <u>Exception to Exhaustion</u>

Defendants have meet their burden of proof in demonstrating that Plaintiff failed to properly exhaust the administrative remedies prior to filing suit.  Plaintiff did not file an opposition, and there is no evidence before the Court that something in this case made the existing administrative remedies effectively unavailable to Plaintiff.  The Ninth Circuit has held that there are exceptions to the general PLRA exhaustion requirement where the actions of prison staff render a prisoner's administrative remedies "effectively unavailable."  See <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1226 (9th Cir. 2010) (a Warden's rejection based upon mistaken reliance on a regulation "rendered [the prisoner's] administrative remedies effectively unavailable"); <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 823 (9th Cir. 2010) (prison officials can render "administrative remedies effectively unavailable by improperly screening a prisoner's grievances"); <u>Albino v. Baca</u>, 747 F.3d at 1177 (failure to inform a prisoner of the administrative appeals process following multiple requests for instruction rendered his administrative remedy effectively unavailable); <u>McBride v. Lopez</u>, 807 F.3d 982, 987 (9th Cir. 2015) ("the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable."); <u>Brown v. Valoff</u>, 422 F.3d at 940 (plaintiff not required to proceed to third level

where appeal granted at second level and no further relief was available).  Specifically, there is no evidence that Plaintiff was unaware of the prison's administrative grievance procedure, or that any prison official erred in the interpretation of any regulation in deciding the administrative appeals.  Accordingly, Defendants' motion for summary judgment should be granted, and the claims against Defendants Sanchez and Padrnos should be dismissed, without prejudice, for failure to exhaust the administrative remedies.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The claims against Defendants Sanchez and Padrnos be dismissed, without prejudice, for failure to exhaust the administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 14, 2020**

UNITED STATES MAGISTRATE JUDGE