# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREEM J. HOWELL,<br><br>            Plaintiff,<br><br>      v.<br><br>MR. J. BURNS, et al.,<br><br>            Defendants. | Case No.  1:19-cv-00715-NONE-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 36) |

Kareem J. Howell ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion for summary judgment, filed on March 11, 2021.  (ECF No. 36.)

**I.**

**RELEVANT BACKGROUND**

This action is proceeding against Defendants Burnes, Babb, Tumacder, and Sexton for deliberate indifference in violation of the Eighth Amendment, retaliation in violation of the First Amendment, and conspiracy.[1]

On March 9, 2020, Defendants filed an answer to the complaint.  (ECF No. 20.)  On March 10, 2020, the Court issued the discovery and scheduling order.  (ECF No. 21.)

---

[1] On March 9, 2021, a notice of suggestion of death as to Defendant Sexton was filed.  (ECF No. 33.)

1

1       As previously stated, on July 1, 2020, Defendants Sanchez and Padrnos filed an
2 exhaustion-related motion for summary judgment.  (ECF No. 25.)

3       On August 17, 2020, the undersigned issued Findings and Recommendations
4 recommending that Defendants Sanchez and Padrnos's exhaustion-related motion for summary
5 judgment be granted.  (ECF No. 26.)

6       On September 24, 2020, the Findings and Recommendations were adopted in full, and
7 the claims against Defendants Sanchez and Padrnos were dismissed, without prejudice, for
8 failure to exhaust the administrative remedies.  (ECF No. 28.)

9       As previously stated, on March 11, 2021, Defendants filed the instant motion for
10 summary judgment.  (ECF No. 36.)  After receiving an extension of time, Plaintiff filed an
11 opposition on April 26, 2021, and Defendants filed a timely reply on May 24, 2021.  (ECF Nos.
12 42, 43, 46.)

## II.

## LEGAL STANDARD

### A.   Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d at 942 (quotation marks and citation omitted).

In arriving at these Findings and Recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### III.

### DISCUSSION

**A.     Summary of Plaintiff's Allegations in Complaint**

Plaintiff was diagnosed in 2006 as suffering from bipolar disorder mixed with psychotic features, a severe psychological disorder. His mental disorder substantially impairs his thought processes, perception of reality and his ability to make sound judgment and grossly impairs his behavior.

In 2011, Plaintiff was housed at CSP and Defendant Sexton was the housing unit facility captain in Plaintiff's housing unit. Currently, Defendant Sexton is the warden at CSP. In 2011, Plaintiff had a psychotic reaction and broke out the windows of his cell. At that time, Defendant Sexton ordered Plaintiff's windows to be covered in mesh[2] metal screen. Immediately after Plaintiff's windows were covered, Plaintiff's mental illness started to deteriorate.

In 2011 and 2012, Plaintiff became a danger to himself and others and received several rule violation reports that were linked to the mesh metal screens over the windows. In 2012,

---

[2] Plaintiff refers to a "mush metal screen" however, the Court assumes that it is a mesh metal screen and refers to it as such.

Plaintiff received a mental health assessment evaluation for those serious reports. The assessment was conducted by Dr. Fowler who determined that Plaintiff's mental illness contributed to his serious rule violations and found that the mesh mental window screens may be an additional restrictive stressor. The doctor found that the window screens could increase the feelings of anxiety and panic and trigger additional disruptive behavior. Defendant Sexton reviewed this report in 2012 and ordered that the mesh metal screens and yellow coatings over Plaintiff's cell be immediately removed.

Plaintiff is currently housed in a segregated housing unit for mentally challenged inmates. Plaintiff filed legal actions against Defendants Burnes, Babb, and Tumacder in February and July 2018. Plaintiff was out of CSP to attend court proceedings and returned to CSP on September 24, 2018. Upon his return, Plaintiff found that Defendants Burnes, Babb, Tumacder and Sexton had a meeting and decided to house Plaintiff back in a cell with mesh metal screens on the windows. Plaintiff alleges that this was done in retaliation for his filing complaints against Defendants Burnes, Babb, and Tumacder.

Plaintiff has not been housed in a cell with mesh metal screens over the cell windows from 2012 to 2019. On September 25, 2018, and September 27, 2018, Plaintiff spoke with Defendant Burnes about removing the mesh metal screens from the windows. Defendant Burnes admitted that Defendants Babb, Tumacder, and Sexton had agreed that moving Plaintiff to a cell with mesh metal screens was a good decision to stop Plaintiff from filing staff complaints and lawsuits against CDCR staff members. Plaintiff also told Defendant Burnes of the harm that being housed with such screens could have and was already having on his mental state. Defendant Burnes stated that he had already spoke to Defendants Babb, Tumacder, and Sexton about the risk to Plaintiff's mental state and they had no concern. Defendant Burnes told Plaintiff, "Maybe that cell will stop you from suing everyone."

Plaintiff's mental health condition started to deteriorate and he was having trouble concentrating and lost interest in reading and writing to people; he stopped exercising; he became verbally and physically assaultive toward staff; he had increased feelings of anxiety, panic attacks, and thoughts of suicide. Plaintiff submitted an emergency appeal; and on October

30, 2018, Plaintiff was interviewed by Huerta. Huerta spoke to Defendant Gamboa in great detail about Plaintiff's complaint. Both Huerta and Gamboa denied Plaintiff's appeal. They stated that Plaintiff was placed in the cell because he broke out the windows of his cell.

### B.    Statement of Undisputed Facts[3]

1.  Plaintiff is an inmate who at all times relevant to the complaint was in the custody of the California State Prison-Corcoran (Corcoran). (Compl., ECF No. 1 at 1.)

2.  Plaintiff has no formal training in psychology or psychiatry. (Chen Decl., Ex. 1, Pl.'s Dep., at 58:16-19.)

3.  At all times relevant, Defendant Burnes was employed by CDCR as a Correctional Sergeant at Corcoran. (Burnes Decl. ¶ 1.)

4.  At all times relevant, Defendant Tumacder was employed by CDCR as a Correctional Lieutenant. (Tumacder Decl. ¶ 1.)

5.  At all times relevant, Defendant Babb was employed by CDCR as a Correctional Captain. (Babb Decl. ¶ 1.)

6.  Plaintiff has been in CDCR custody since 2001. (Pl.'s Dep. at 61:6-7.)

7.  Plaintiff has been receiving mental health treatment within CDCR's Mental Health Services Delivery System since 2006. (Vess Decl. ¶ 9, Pl.'s Dep at 18:10-13.)

8.  Over the years, Plaintiff has moved between the various levels of care provided within CDCR: Clinical Care Case Management System (CCCMS), Enhanced Outpatient (EOP), Mental Health Crisis Bed, and one placement with the Department of State Hospitals. (Vess Decl. ¶ 9; see also Pl.'s Dep. at 18:14-19:15.)

9.  Plaintiff admits that his mental health level of care has fluctuated while he has been in CDCR custody, and that his mental health fluctuates. (Pl.'s Dep. at 18:24-19:2; 21:23-23:20.) In Plaintiff's own words, his level of care has gone "up, down, up down." (Id. at 18:24-19:2.)

10. Plaintiff's Bed Assignments History shows that he was housed at Corcoran,

---

[3] Hereinafter referred to as "UF."

5

1  Facility 4A, Housing Unit 4A1L, Cell #7, from September 24, 2018, to October 5, 2018.
2  Plaintiff was also housed at Corcoran from November 6, 2018, to January 24, 2019, but he was
3  not housed again in 4A1L, Cell #7 during that time; rather, he was housed in Facility 4A1R.
4  (Burnes Decl. ¶ 4, Ex. A at 3.)

5        11.     Defendants do not recall being involved in any decision in 2018, or any time, to
6  house Plaintiff in Cell #7, or any cell with windows that have mesh metal screens.  (Burnes Decl.
7  ¶ 5; Tumacder Decl. ¶ 3; Babb Decl. ¶ 3.)  Defendants further do not recall having any
8  conversations with each other about housing Plaintiff in any particular cell or in a cell with mesh
9  metal screens over the windows.  (Id.)

10       12.     As custody staff, Defendants do not have access to an inmate's medical or mental
11 health records.  (Burnes Decl. ¶ 7; Tumacder Decl. ¶ 5; Babb Decl. ¶ 5.)

12       13.     Defendants are not aware of any cell door windows on Facility 4A that have
13 metal screens that completely obstruct the view through the cell window, as staff must be able to
14 see into an inmate's cell through the cell door window for obvious safety and security measures.[4]
15 (Burnes Decl. ¶9, Tumacder Decl. ¶ 7; Babb Decl. ¶ 7.)

16       14.     The decision to house an inmate within a particular cell in a particular housing
17 unit, regardless if the cell has windows with mesh metal screens, is typically made by a housing
18 unit officers, and generally does not require approval from a sergeant, lieutenant, or captain.
19 (Burnes Decl. ¶ 10; Tumacder Decl. ¶ 8; Babb Decl. ¶ 8.)  Plaintiff disputes by his own
20 declaration which is not attached.

21       15.     CDCR policy generally does not require correctional staff to have a specific
22 reason to house an inmate in a cell with windows that have been fortified with mesh metal
23 (grill/plate) screen or wiring.  There is no policy regarding housing—or not housing—inmates in
24 cells with these types of windows.  These cells are not specifically designated.  However, an
25 inmate may be housed in a cell with windows that have been fortified with mesh metal wiring if
26 the inmate has a history of breaking windows.  (Burnes Decl. ¶ 8; Tumacder Decl. ¶ 6; Babb

---

[4] The exhibits cited by Plaintiff do not dispute this statement of fact.

1  Decl. ¶ 6.)

2  16. Plaintiff has a history of breaking cell windows. He was found guilty of six rules
3  violations for breaking cells windows during an approximately one year period leading up to the
4  date of the alleged violation, as follows: (1) RVR Log No. 5483299, on August 14, 2018; (2)
5  RVR Log No. 4784027, on March 29, 2018; (3) RVR Log No. 4671427, on March 12, 2018; (4)
6  RVR Log No. 3650927, on October 26, 2017; (5) RVR Log No. 3183626, on August 15, 2017;
7  and (6) RVR Log No. 3124328, on August 12, 2017. (Burnes Decl. ¶ 11, Ex. B.)

8  17. Plaintiff admits that he has received "approximately 4 or 5" rules violations for
9  breaking cell windows. (Pl.'s Dep. at 13:19-14:2.) Plaintiff admits that he has hurt himself
10 "pretty bad" when punching a cell window in order to break it; he cut his arm and hand open,
11 leaving a scar. (Id. at 27:7-22.) Plaintiff admits that it is kind of dangerous, and that he has
12 never tried to break out a cell window with mesh metal screens in it. (Id. at 27:23-24; 31:17-21.)

13 18. Although Defendants do not recall being involved in any decision to place
14 Plaintiff in any particular cell or in a cell with windows that have mesh metal screens, each
15 Defendant believes the placement was likely for Plaintiff's own safety due to his history of
16 breaking windows. (Burnes Decl. ¶ 12; Tumacder Decl. ¶ 9; Babb Decl. ¶ 9.)

17 19. In September 2018, Plaintiff was receiving treatment at the CCCMS level of care,
18 which is intended to provide relatively low levels of mental health care services for relatively
19 high functioning inmates whose mental health condition requires minimal monitoring and does
20 not substantially impair their daily behavior. (Vess Decl. ¶¶ 10, 21-23.) During this time period,
21 Plaintiff had access to mental health treatment. (Id.) He was offered both individual and group
22 treatment on a regular basis. (Id.) More often than not, he did not attend group therapy
23 treatment when it was offered. (Id. at ¶ 22.)

24 20. There is nothing to indicate that Plaintiff suffered a significant change or
25 deterioration of his mental health during September 2018 time. (Id. at ¶ 23.)

26 **C. Analysis of Defendants' Motion**

27 Defendants argue they are entitled to summary judgment because the undisputed facts

28

7

show that: (1) Defendants did not knowingly disregard any serious risk of harm to Plaintiff's mental health on September 24, 2018, because there was nothing in Plaintiff's recent mental health indicating that he could not be housed in a cell with windows that have metal screens; (2) Plaintiff did not suffer harm as a result of his placement in a cell with windows that have metal screens; (3) Plaintiff's placement was justified by legitimate safety and security reasons due to his history of breaking cells windows; and (4) Defendants are entitled to qualified immunity.

### 1. Deliberate Indifference to Serious Risk to Plaintiff's Mental Health

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 102-04 (1975). Prisoners' mental health needs are among the medical needs covered by the Eighth Amendment. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995).

In order to state a claim under the Eighth Amendment, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

The elements the prisoner must show are (1) a serious mental health need; and (2) deliberate indifference to that need by prison officials. See McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60. An inmate exhibiting symptoms of psychosis can amount to a serious medical need for purposes of the objective prong of a deliberate indifference claim. Atencio v. Arpaio, 161 F.Supp.3d 789, 811 (D. Ariz. 2015); Coleman v. Wilson, 912 F. Supp. 1282, 1321 (E.D. Cal.

1995) (defendants exhibited deliberate indifference to inmates' psychotic condition by placing them in segregated housing).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). In general, deliberate indifference may be shown when prison officials deny, delay, and intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Deliberate indifference is a high standard, and the prisoner must establish that the indifference to his medical needs is substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interest or safety.' " Farmer, 511 U.S. at 835.

Finally, mere differences of opinion between a prisoner and medical staff, or between medical professionals, as to the proper course of treatment for a medical condition do not give rise to a § 1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Defendants do not dispute that an inmate exhibiting symptoms of psychosis amounts to a serious medical need.  Therefore, the remaining issue is whether Defendants were deliberately indifferent to Plaintiff's psychotic condition.  To this end, Defendants argue that the undisputed facts demonstrate they did not disregard any serious risk of harm to Plaintiff's mental health, and that Plaintiff suffered no harm.

Defendants do not recall being involved in any decision in 2018, or any time, to

house Plaintiff in Cell #7, or any cell with windows that have mesh metal screens. (UF 11.) Defendants further do not recall having any conversations with each other about housing Plaintiff in any particular cell or in a cell with mesh metal screens over the windows. (Id.) Defendants declare that even if they were involved in any decision to house Plaintiff in a cell with windows that had metal screens, they did not do so for any improper purpose. (Burnes Decl. ¶ 6; Tumacder Decl. ¶ 4; Babb Decl. ¶ 4.)

It is undisputed that as custody staff, Defendants do not have access to an inmate's medical or mental health records. (UF 12.) Defendants are not aware of any cell door windows on Facility 4A that have metal screens that completely obstruct the view through the cell window, as staff must be able to see into an inmate's cell through the cell door window for obvious safety and security measures. (UF 13.) The decision to house an inmate within a particular cell in a particular housing unit, regardless if the cell has windows with mesh metal screens, is typically made by a housing unit officers, and generally does not require approval from a sergeant, lieutenant, or captain. (UF 14.) CDCR policy generally does not require correctional staff to have a specific reason to house an inmate in a cell with windows that have been fortified with mesh metal (grill/plate) screen or wiring. There is no policy regarding housing—or not housing—inmates in cells with these types of windows. These cells are not specifically designated. However, an inmate may be housed in a cell with windows that have been fortified with mesh metal wiring if the inmate has a history of breaking windows. (UF 15.) Plaintiff has a history of breaking cell windows. He was found guilty of six rules violations for breaking cells windows during an approximately one year period leading up to the date of the alleged violation, as follows: (1) RVR Log No. 5483299, on August 14, 2018; (2) RVR Log No. 4784027, on March 29, 2018; (3) RVR Log No. 4671427, on March 12, 2018; (4) RVR Log No. 3650927, on October 26, 2017; (5) RVR Log No. 3183626, on August 15, 2017; and (6) RVR Log No. 3124328, on August 12, 2017. (UF 16.) Plaintiff admits that he has received "approximately 4 or 5" rules violations for breaking cell windows. (UF 17.) Plaintiff admits that he has hurt himself "pretty bad" when punching a cell window in order to break it; he cut his arm and hand open, leaving a scar. (Id.) Plaintiff admits that it is kind of dangerous, and that he has

never tried to break out a cell window with mesh metal screens in it. (Id.) Although Defendants do not recall being involved in any decision to place Plaintiff in any particular cell or in a cell with windows that have mesh metal screens, each Defendant believes the placement was likely for Plaintiff's own safety due to his history of breaking windows. (UF 18.)

Plaintiff contends that a note made by psychologist Dr. Fowler approximately six years prior to the allegations in this action, supports his claim that Defendants had prior knowledge that he could not be housed in a cell with windows that have metal screens. Plaintiff attempts to impart constructive knowledge by referencing the Rules Violation Report, Mental Health Assessment Request, dated February 10, 2012, in which he claims was contained in his central file. (ECF No. 42 at 4; ECF No. 43 at 10-11.) This document contains a handwritten note by Dr. Fowler, Psy. D, which states that "mesh screen on cell windows … needs to be removed" because "they can increase [inmate's] feelings of anxiety and panic and trigger additional disruptive behavior. (Id.) As an initial matter, Defendants correctly object that the statement is inadmissible hearsay. Fed. R. Evid. 801-803, 805. Nonetheless, even if it is admissible, the document was written six years prior to the alleged events, and other than the single reference in this note, there is nothing in Plaintiff's recent mental health to indicate that in 2018 he should not be housed in a cell with a metal mesh window screen. Plaintiff fails to provide any evidence that the document or statement was intended to place an indefinite restriction prohibiting custody staff from housing Plaintiff in a cell with mesh screens on the windows, as opposed to a one-time recommendation made by a psychologist at the time given the circumstances present at that time. In addition, Plaintiff acknowledges that he has been receiving mental health treatment in CDCR since 2006, and his mental health level fluctuates as it has gone "up, down, up, down" over the years. (UF 7, 9.) Furthermore, the mere fact that Defendants may have had access to Plaintiff's C-file does not necessarily demonstrate knowledge of the contends of every documents contained within that file. It is undisputed that Defendants do not recall being involved in any decision in 2018, or any time, to house Plaintiff in Cell #7, or any cell with windows that have mesh metal screens. (UF 11.) Defendants further do not recall having any conversations with each other about housing Plaintiff in any particular cell or in a cell with mesh metal screens over

1  the windows.  (Id.)  In addition, Defendants did not have access to Plaintiff's medical or mental
2  health records.  (UF 12.)

3        Plaintiff also contends that a mental health assessment by social worker R. Handy, dated
4  January 17, 2012, and a Inmate Request for Interview, CDCR Form 22 submitted on September
5  26, 2018, support his argument that Defendants had prior knowledge of the prohibition against
6  housing him in a cell with mesh metal window screens.  (ECF No. 42 at 21, ECF No. 43, Exs. D
7  & E.)  However, both of these documents simply reference and note Plaintiff's own reports to
8  not be housed with mesh screen windows, and Defendants declare, under penalty of perjury, that
9  they did not have prior knowledge that Plaintiff could not be housed in a cell with metal screen
10 windows due to his mental health or for any other reason.  (ECF No. 43, Exs. D & E;
11 (Burnes Decl. ¶ 7; Tumacder Decl. ¶ 5, Babb Decl. ¶ 5.)  These documents fail to create a triable
12 issue of fact regarding whether Defendants knew placing Plaintiff in a  cell with mesh screen
13 windows created a substantial risk of serious harm to his mental health in 2018.

14       Plaintiff further contends that Defendants knew he could not be housed in a cell with
15 windows that have metal screens through their conversations with former Warden Sexton.
16 However, Defendants do not recall having any conversations with each other about housing
17 Plaintiff in any particular cell or in a cell with mesh metal screens over the windows.  (UF 11.)
18 Despite Plaintiff's contention, he has not submitted any admissible evidence to demonstrate that
19 Warden Sexton conversed with Defendants about the alleged restriction to not be housed in a cell
20 with metal window screens.  Plaintiff's sweeping conclusory allegation does not suffice to
21 demonstrate deliberate indifference.  See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).
22 Thus, Plaintiff's unsupported speculation about Defendants' mental state does not create a triable
23 issue of fact. See Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1028 (9th Cir.
24 2001) (plaintiff's belief that defendant acted with an unlawful motive, without supporting
25 evidence, is not cognizable evidence on summary judgment.).

26       Defendants have also produced evidence that Plaintiff did not suffer harm from
27 Defendants' actions.  See Estelle v. Gamble, 429 U.S. at 106 (the Eighth Amendment only
28 proscribes acts or omissions by prison officials that are "sufficiently harmful to evidence

deliberate indifference to serious medical needs.") It is undisputed that Plaintiff was housed in cell #7 for eleven days from September 24, 2018, to October 5, 2018. (UF 10.) During this time period, Plaintiff was receiving treatment at the CCCMS level of care, which is intended to provide relatively low levels of mental health care services for relatively high functioning inmates whose mental health condition requires minimal monitoring and does not substantially impair their daily behavior. (UF 19.) Defendants have presented a mental-health-care expert's opinion that Plaintiff did not suffer harm to his mental health as a result of being housed in a cell containing windows with mesh screens. (UF 20.) Defendants' psychological expert reviewed Plaintiff's mental health file and concluded that Plaintiff did not suffer harm as a result of being housed in a cell with windows that have metal screens. (Vess Decl. ¶ 31.)

Plaintiff contends that he "did in fact suffer a harm" in the form of "mental anguish" and "psychological abuse." (ECF No. 42 at 12.) Plaintiff also contends his mental disorder "deteriorated" and several old symptoms and behavioral patterns returned, such as "trouble concentrating, lost [sic] of interest in the things he once enjoyed like coming out of the cell to attend exercise yard, one-to-one sessions with primary care provider, and mental health treatment groups." (Id.; Pl.'s Decl. at 18.) While Plaintiff may offer testimony as to what he experiences and felt as a result of being housed in cell #1, he cannot testify regarding a diagnosis, prognosis, opinions, inferences, or causation of his alleged injuries as he has no medical expertise, training, or education. Fed. R. Evid. 701, 702. Therefore, Plaintiff's opinion that his alleged decline in mental health was caused by Defendants' action is inadmissible medical opinion testimony from a lay witness. Accordingly, Plaintiff has failed to create a triable issue of fact regarding his deliberate indifference claim as there is no evidence that any of his alleged psychological harms were caused by Defendants' actions, and Defendants' motion for summary judgment should be granted.[5]

///

---

[5] Because this Court finds Defendants are entitled to summary judgment on the merits of the Eighth Amendment claims there is no reason to reach Defendants' argument that they are entitled qualified immunity issue in this case.

### 2. Retaliation in Violation of the First Amendment

To state a claim for retaliation in the prison context, a plaintiff must allege 1) that he was engaged in protected conduct; 2) that the defendant took adverse action against the plaintiff; 3) the causal connection between the adverse action and the protected conduct; 4) that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities[;]" and 5) that the retaliatory acts did not advance the legitimate goals of the correctional institution. Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff bears the burden to prove that there was no legitimate penological reason for Defendants housing him in a cell with mesh screens. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995). Moreover, courts should afford appropriate deference and flexibility to prison official in evaluating the proffered legitimate penological reasons for conduct alleged to be retaliatory. Id. at 807. A prison official may prevail on a retaliation claim by proving that he would have made the same decision absent the protected conduct for reasons reasonably related to a penological interest. Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002). It is without doubt that prisons have a legitimate penological interest in ensuring the safety and security of prisons. Bell v. Wolfish, 441 U.S. 520, 540 & n.23 (1979); Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

Here, Plaintiff's placement in the cell with mesh screens advanced the penological goal of keeping Plaintiff and the prison safe by preventing him from breaking the windows. It is undisputed that Plaintiff has a history of breaking cell windows. He was found guilty of six rules violations for breaking cells windows during an approximately one year period leading up to the date of the alleged violation, as follows: (1) RVR Log No. 5483299, on August 14, 2018; (2) RVR Log No. 4784027, on March 29, 2018; (3) RVR Log No. 4671427, on March 12, 2018; (4) RVR Log No. 3650927, on October 26, 2017; (5) RVR Log No. 3183626, on August 15, 2017; and (6) RVR Log No. 3124328, on August 12, 2017. (UF 16.) Plaintiff admits that he has

1 received "approximately 4 or 5" rules violations for breaking cell windows. (UF 17.) Plaintiff
2 admits that he has hurt himself "pretty bad" when punching a cell window in order to break it; he
3 cut his arm and hand open, leaving a scar. (UF 17.) Plaintiff admits that it is kind of dangerous,
4 and that he has never tried to break out a cell window with mesh metal screens in it. (UF 17.)
5 Thus, Plaintiff's placement in a cell with mesh screen over the cell windows was for his own
6 safety and protection, because he has a history of breaking windows. Plaintiff has not meet his
7 burden with admissible evidence that Defendants did not have a penological justification in
8 placing him in a cell with windows that have metal screens. Accordingly, Defendants' motion
9 for summary judgment on this claim should be granted.

        3.    <u>Conspiracy</u>

11 In the context of conspiracy claims brought pursuant to section 1983, a complaint must
12 "allege [some] facts to support the existence of a conspiracy among the defendants." <u>Buckey v.</u>
13 <u>County of Los Angeles</u>, 968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police</u>
14 <u>Department</u>, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired
15 or acted jointly in concert and that some overt act was done in furtherance of the conspiracy.
16 <u>Sykes v. California</u>, 497 F.2d 197, 200 (9th Cir. 1974).

17 A conspiracy claim brought under section 1983 requires proof of "an agreement or
18 meeting of the minds to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th
19 Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-
20 41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, <u>Hart v.</u>
21 <u>Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>,
22 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not
23 know the exact details of the plan, but each participant must at least share the common objective
24 of the conspiracy." <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers of Am.</u>, 865 F.2d at
25 1541).

26 Plaintiff contends that Defendants conspired together to house him in a cell covered with
27 metal covering over the windows in retaliation for filing legal actions. However, for the reasons
28 explained above, Plaintiff's claim fails because Defendants did not violate Plaintiff's

constitutional rights.  That is, Defendants did not knowingly disregard a risk of harm to Plaintiff's mental health when they housed him.  The metal screens were not placed on the cell window in retaliation because it served a legitimate penological purpose for Plaintiff's own safety.  Accordingly, Plaintiff's conspiracy claims fails and Defendants' motion for summary judgment should be granted.

## IV.
## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. The Clerk of Court be directed to enter judgment in favor of Defendants.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **October 26, 2021**

UNITED STATES MAGISTRATE JUDGE